UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

        Plaintiff,

  -against-

204 ELLERY ST., LLC, *et al.*,

        Defendants.
----------------------------------------------------X

REPORT AND RECOMMENDATION

23 CV 5343 (ENV)(RML)

LEVY, United States Magistrate Judge:

        By order dated October 31, 2023, the Honorable Eric N. Vitaliano, United States District Judge, referred plaintiff's motion to appoint a receiver to me for report and recommendation. I held a telephone conference with counsel on March 5, 2024 and received a status report from the parties on March 19, 2024. For the reasons stated below, I respectfully recommend that the motion be granted.

## BACKGROUND AND FACTS

        Plaintiff Federal National Mortgage Association ("plaintiff" or "Fannie Mae") commenced this mortgage foreclosure action on July 13, 2023, with respect to two multi-unit residential buildings located at 204 Ellery Street, Brooklyn, New York (the "Ellery Property") and 199 Meserole Street, Brooklyn, New York (the "Meserole Property," and together, the "Properties"). (See Complaint, dated July 13, 2023 ("Compl."), Dkt. No. 1.) Defendant Jorge Gamba is the sole member of both defendants 204 Ellery St., LLC (the "Ellery Borrower-Defendant") and 199 Meserole St., LLC (the "Meserole Borrower-Defendant," and together, the "Borrower-Defendants"). (Id. ¶ 10.) Plaintiff is the current owner of the mortgage loans at issue, having acquired them by way of assignment from the original mortgagee. (Id. ¶ 3.) Plaintiff now moves, pursuant to Rule 66 of the Federal Rules of Civil Procedure, to appoint

Orazio Crisalli, a principal of Syracuse Realty Group, as receiver to collect rents and oversee the maintenance of the Properties, which secure the respective loans.  (Memorandum of Law in Support of Plaintiff's Motion for an Order Appointing a Receiver, dated Sept. 26, 2023 ("Pls.' Mem."), Dkt. No. 17-2, at 1, 15.)

It is undisputed that starting February 1, 2021, and continuing through April 30, 2022, the Borrower-Defendants failed to pay their monthly mortgage payments, as required under the loan documents.  Plaintiff agreed to forbear from exercising any remedies on the condition that the Borrower-Defendants pay all overdue amounts in monthly installments following the conclusion of the forbearance period in addition to the standard monthly payments already due under the loan documents.  However, the Borrower-Defendants ceased making both their standard monthly payments and their monthly payments for the forborne amounts starting April 1, 2023, and have made no payment since.  (Id. at 1; Declaration of Joel Shaddox, dated Sept. 6, 2023 ("Shaddox Decl."), Dkt. No. 17-3, ¶¶ 16, 17.)  These failures to pay the amounts due under the loan documents and forbearance agreements constitute "Events of Default" under the loan documents.  (Shaddox Decl. ¶ 16.)  Under Section 3 of the Mortgage Agreements, if an Event of Default has occurred, the "Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property." (Id. ¶ 29.)  Furthermore, the Borrower-Defendants agreed that, if plaintiff "elects to seek the appointment of a receiver … at any time after an Event of Default has occurred and is continuing, Borrower . . . expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte, if permitted by applicable law." (Id. ¶ 30.)

According to plaintiff, "as a result of the Borrower-Defendants' mismanagement, the Properties cumulatively have over 100 open New York City Department of Housing

2

Preservation and Development ("HPD") violations issued against them, diminishing the value of the Properties and potentially endangering the Properties' tenants." (Pls.' Mem. at 2; Shaddox Decl. ¶¶ 32-33.) Additionally, the Ellery Borrower-Defendant has allegedly failed to pay its taxes and insurance premiums, and neither Borrower-Defendant has turned over any rents to plaintiff following the "Events of Default," as required under the loan documents. (Pls.' Mem. at 2; Shaddox Decl., Exs. 5, 7.) Plaintiff contends that appointment of a receiver is necessary to manage and operate the Properties in order to avoid further decline in the value of the collateral securing the loans. (Pls.' Mem. at 13.)

Defendants do not deny that they are in default on the notes and mortgages, but they oppose the motion on the ground that plaintiff has not demonstrated cause for the appointment of a receiver. (Defendants' Memorandum of Law in Opposition to Plaintiff's Application for Appointment of a Receiver, dated Oct. 15, 2023, Dkt. No. 18.) According to defendants, "there is no threat of loss or injury to the Properties," which are both rent-stabilized, since defendants "have managed and maintained the Properties since 2020 by collecting the rent payments and overseeing day-to-day operations." (Id. at 3-4.) They argue that "[t]he change from Defendants['] management to a receiver would cause disruption in the operations of the Properties" and that "plaintiff cannot prove fraud or other illegal activity which would mandate a receiver." (Id.)

## DISCUSSION

A. Standard for Appointment of a Receiver

"[R]eceivership is 'traditionally used to protect the value of an asset that is the subject of litigation.'" U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC, 866 F. Supp. 2d

3

247, 255 (S.D.N.Y. 2012) (citing United States v. Ianniello, 824 F.2d 203, 205 (2d Cir. 1987)); see also CCRF 2007-MF1 E. 53 Complex, LLC v. E. 53 BSD LLC, No. 19 CV 2553, 2020 WL 13133639, at *11 (E.D.N.Y. Dec. 18, 2020) (citing Sovereign Bank v. 347 E. 173 LLC, No. 11 CV 1061, 2011 WL 2693525, at *3 (S.D.N.Y. June 29, 2011) (holding that a court may appoint a receiver to protect and conserve mortgaged property where there is a pending foreclosure action)); United States v. Falls Ct. Props. Co., No. 08 CV 1197, 2009 WL 1924771, at *6 (N.D.N.Y. July 1, 2009) ("The appointment of receiver serves an important function of protecting assets pledged as security for a debt and permits the lender to preserve income and control expenses associated with the operation of the property in question.")

    Plaintiff argues that a receiver should be appointed here because (i) multiple Events of Default have occurred, (ii) the Borrower-Defendants consented to such an appointment and waived any right to oppose it following the occurrence of an Event of Default, and (iii) equitable considerations counsel in favor of appointment. (Pls.' Mem. at 10) (citing Fannie Mae v. PF Hillside Manor, LP, No. 23 CV 2024, at *4-6 (E.D. Pa. Sept. 14, 2023) (granting plaintiff's motion for the appointment of a receiver where the borrower-defendant agreed ex ante for the appointment of a receiver, failed to cure its financial defaults, and allowed multiple code violations and troubling property conditions to develop).) Even where, as here, there is a receivership provision in the mortgage, "the Second Circuit cautions that the 'appointment of a receiver is considered to be an extraordinary remedy [that] should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property.'" U.S. Bank Nat. Ass'n v. Crutch, No. 09 CV 998, 2010 WL 2978172, at *4 (E.D.N.Y. July 26, 2010) (quoting Rosen v. Siegel, 106 F.3d 28, 34 (2d Cir. 1997) (internal marks and citation omitted)); see also Gordon v. Washington, 295 U.S. 30, 39 (1935) ("Receivership, with the attendant

burdensome expense, should be resorted to only on a plain showing of some threatened loss or injury to the property, which the receivership would avoid."); Citibank, N.A. v. Nyland (CF8) Ltd., 839 F.2d 93, 97 (2d Cir. 1988) (explaining that appointment of a receiver is not automatic even where permitted under the mortgage, but is an "extraordinary remedy" that a court should employ cautiously and only grant "when clearly necessary to protect plaintiff's interest in the property."); Bristol Oaks, L.P. v. Werezberger, No. 95 CV 3973, 1996 WL 19207 (E.D.N.Y. Jan. 2, 1996) ("The appointment of a receiver is considered an extraordinary remedy that should be employed with great caution and granted only where such relief is clearly necessary to protect a plaintiff's interests in the relevant property.").

> Where the mortgage authorizes appointment of a receiver, and the mortgagee has consented to such appointment and repeatedly defaulted on conditions of the mortgage, the mortgagee "bears the burden of demonstrating why a receiver should not be appointed." D.B. Zwirn Special Opportunities Fund v. Tama Broad., Inc., 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008); see also Miss Jones LLC v. Stiles, No. 17 CV 1450, 2019 WL 3034906, at *5 (S.D.N.Y. July 10, 2019) (appointing receiver where the defendant did "not appear to have been using the rental income to maintain the property and it [wa]s likely to diminish in value without intervention," and a "receiver could collect rent and use the proceeds to make sure the property [wa]s properly maintained, retaining its value during the pendency of the foreclosure action."). Courts examine the following equitable factors in determining whether to appoint a receiver:

> > (1) Fraudulent conduct by the defendant; (2) any imminent danger that the property would be lost, injured, or otherwise lessened in value; (3) the inadequacy of available legal remedies; (4) whether the harm to the plaintiff caused by a denial of the appointment would be greater than the injury to those opposing the appointment; (5) the plaintiff's likelihood of success in the action and the possibility of irreparable injury to the plaintiff's interest in

5

the property; (6) whether the property is inadequate security for the outstanding debt; and (7) the financial status of the debtor.

Stiles, 2019 WL 3034906, at *2 (citing cases); see also Varsames v. Palazzolo, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (citing Wright & Miller, Fed. Practice and Procedure § 2983 (1999)); Prudential Ins. Co. of Am. v. Hilton Hotels, Corp., No. 95 CV 5575, 1995 WL 758781, at *2 (S.D.N.Y. 1995). Courts also examine whether the "interests of plaintiff and others sought to be protected will in fact be well served by receivership." New York v. Fin. Servs. Network, 930 F. Supp. 865, 872 (W.D.N.Y. 1996) (citation omitted). I will address each factor in turn.

(1) <u>Fraudulent Conduct by Defendants</u>

Plaintiff does not allege any fraudulent conduct on the part of defendants. However, as plaintiff points out, evidence of fraud is not required for the appointment of a receiver. See Greystone Bank v. Tavarez, No. 09 CV 5192, 2010 WL 11651639, at *2 (E.D.N.Y. Apr. 26, 2010) (granting receivership despite previously noting that there was "no evidence of any fraud") (citing D.B. Zwirn Special Opportunities Fund, L.P., 550 F. Supp. 2d at 490-92 (granting receivership despite lack of any alleged fraud by borrower where mortgage entitled the plaintiff to appointment of a receiver and it was "undisputed that [the borrower] has defaulted on its loan obligations")); see also U.S. v. Trusty Cap., Inc., No. 06 CV 8170, 2007 WL 44015, at *8 (S.D.N.Y. Jan. 5, 2007) (granting receivership motion where, "[a]lthough there is no evidence of fraud on the part of Defendant's current management, Defendant has also failed to demonstrate any concrete plan for recovering its debts, other than seeking to borrow more funds."). Accordingly, the absence of fraudulent conduct here does not provide a basis for denying plaintiff's motion.

(2) <u>Imminent Danger to the Properties and</u>
(3) <u>Inadequacy of Available Legal Remedies</u>

6

Defendants do not address plaintiff's claims that plaintiff has had to make tax payments on their behalf, as well as pay insurance premiums for the Ellery Property. Nor do they dispute that the Properties have over 100 open HPD violations combined, including fire and safety violations. (Shaddox Decl., Exs. 25 & 26.) According to plaintiff, in the absence of a court-appointed receiver, "there is every reason to believe the Borrower-Defendants' management will result in the accumulation of additional violations against the Properties, further diminishing the value of the collateral securing the loans, and therefore impairing Plaintiff's ability to recover on the loans." (Pls.' Mem. at 14) (citing CCRF 2007-MF1 E. 53 Complex, 2020 WL 13133639, at *12 (appointing receiver because, *inter alia*, the defendant failed to pay majority of real estate taxes owed, and "rack[ed] up multiple health and safety violations brought by the New York City Department of Buildings, many of which remained outstanding as of the date of [the receivership motion]."); Stiles, 2019 WL 3034906, at *4 (granting motion to appoint a receiver, in part due to property conditions, including the defendant's failure to repair leaks in the floor and gutter); Sovereign Bank, 2011 U.S. WL 2693525, at *3 (appointing a receiver where defendant failed to pay real estate taxes on the mortgaged property and allowed at least one building to fall into serious disrepair); Greystone Bank, 2010 WL 11651639, at *2 (appointing a receiver because, *inter alia*, the defendants had not paid real estate taxes and insurance costs for the building)). I therefore find that these factors support the appointment of a receiver.

(4) Balance of Harms

Because the Borrower-Defendants are each single-asset entities, whose sole asset is the respective property in question, the Properties are the only vehicle for any meaningful recovery on the mortgage loans. Therefore, it is critical that the value of the Properties be

7

maintained. The Borrower-Defendants do not explain how they would be deprived of any value or benefit by the appointment of a receiver, and as plaintiff points out, they could potentially gain an advantage as the beneficiaries of any residual value of the Properties following satisfaction of plaintiffs' mortgage liens. (Pls.' Mem. at 14.) Thus, the balance of equites supports appointing a receiver over the absence of any demonstrated harm to the Borrower-Defendants.

(5) Plaintiff's Likelihood of Success

There is no question that plaintiff has a high likelihood of success in this foreclosure action given the Events of Default giving rise to plaintiff's right to foreclose. (See Shaddox Decl. ¶¶ 14, 25-27, 32-35.) Defendants have not disputed the key allegations made by plaintiff. This factor thus weighs in favor of granting the motion.

(6) Whether the Property is Inadequate Security for the Debt and
(7) Financial Status of the Debtor

The Properties are the sole available source of recovery to Fannie Mae on the loans, and there is ample evidence that they are in imminent danger of declining in value. The Properties and the rents collected on them are the sole collateral for the Loan and the only assets on which the plaintiff may recover given the Borrower-Defendants' default. In order to maintain their status as adequate security for the debts, the appointment of a receiver is advisable. While the court has little information about defendants' financial status, it is apparent that they are unable to meet their mortgage obligations at this time. Accordingly, these factors favor appointment of a receiver.

In sum, having evaluated all of the relevant factors, including the explicit receivership provision in the mortgage, I find that appointment of a receiver is warranted to protect plaintiff's interests in the Properties. I therefore respectfully recommend that plaintiff's motion be granted.

B. <u>Appointment of Ocasio Crisalli</u>

Plaintiff proposes that the court appoint Orazio Crisalli of Syracuse Realty Group ("SRG") as receiver of the Properties and argues that Mr. Crisalli is well-qualified to serve as receiver. (<u>See</u> Declaration of Orazio Crisalli, dated Aug. 31, 2023 ("Crisalli Decl."), ¶¶ 2-7 & Ex. 1 (providing Mr. Crisalli's professional qualifications).) Mr. Crisalli is a licensed real estate broker and co-owner of SRG, a New York-based property management company experienced in handling all aspects of property management, including accounting, budgeting, leasing, tenant relations, and property services such as security. (<u>Id.</u> ¶ 6.) Mr. Crisalli has over thirty years of experience as a property manager of multi-family units and has extensive experience as a court-appointed receiver, with a specialty in stabilizing distressed assets. (<u>Id.</u> ¶¶ 3, 5.) SRG has an office in New York City, and Mr. Crisalli presently serves as receiver or directs real estate owned property managers on six assets in Manhattan and Brooklyn. (Reply Declaration of Orazio Crisalli, dated Oct. 27, 2023, Dkt. No. 19-1, ¶¶ 2, 3.) I find that Mr. Crisalli is qualified, and I respectfully recommend that he be appointed receiver of the Properties.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff's motion for appointment of a receiver be granted, and that Orazio Crisalli be appointed receiver. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with a

courtesy copy to Judge Vitaliano, within fourteen (14) days.  Failure to file objections in a timely manner may waive a right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72.

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      April 23, 2024